UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART-TEK SERVICE SOLUTIONS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No.: 15-cv-0452-BTM-JMA<br><br>**ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NO. 29]** |

The United States Internal Revenue Service ("IRS") has filed a motion for summary judgment as to Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (ECF No. 29.) For the reasons discussed below, the IRS's motion will be granted in part and denied without prejudice in part.

I. **BACKGROUND**

This is one of five actions filed by related entities against the IRS.[1] Each case is based on the claim that the IRS failed to comply with its obligations under 5 U.S.C. § 552 to respond to FOIA requests submitted by the plaintiffs. Plaintiffs

---

[1] The five actions (including this one) are: Trucept, Inc., fka Smart Tek Solutions Inc. v. United States Internal Revenue Service, Case No. 15-cv-0447-BTM-JMA; Smart-Tek Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0449-BTM-JMA; Smart-Tek Service Solutions Corp. v. United States Internal Revenue Service, Case No. 15-cv-0452-BTM-JMA; Smart-Tek Automated Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0453-BTM-JMA; and American Marine LLC v. United States Internal Revenue Service, Case No. 15-cv-0455-BTM-JMA.

1 contend they submitted their requests after the IRS filed a series of liens against
2 them between 2011 and 2013 holding them liable for payroll tax liabilities of other
3 corporations under alter ego and/or successor liability theories.

4 Plaintiff Smart-Tek Service Solutions Corp. ("Plaintiff") alleges it sent a
5 written FOIA request to the IRS on May 12, 2014. Compl. (ECF No. 1) ¶ 10. Under
6 5 U.S.C. § 552(a)(6)(A)(i), an agency has 20 business days following receipt of a
7 FOIA request to determine whether to comply with the request and must
8 "immediately" notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A)(i).
9 On September 29, 2014, the IRS allegedly sent a response to Plaintiff
10 acknowledging receipt of the request but "failed to make any determination about
11 the request." Compl. ¶ 11. On February 27, 2015, having received no further
12 response from the IRS, Plaintiff initiated this action.

13 On October 7, 2016, the IRS filed the instant motion. It indicates it has now
14 completed its search for records and released 1,598 pages in full, and 369 pages
15 in part, of non-exempt documents responsive to Plaintiff's FOIA request. It seeks
16 summary judgment on the ground that it has fully discharged its obligations under
17 5 U.S.C. § 552. Plaintiff opposes the motion. (ECF No. 31.)

**II.    DISCUSSION**

A. FOIA Summary Judgment Standard

20 Summary judgment is appropriate if the evidence, when viewed in the light
21 most favorable to the non-moving party, demonstrates "there is no genuine dispute
22 as to any material fact." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477
23 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there
24 is no material factual dispute and he or she is entitled to prevail as a matter of law.
25 Celotex, 477 U.S. at 323. If the moving party meets its burden, the nonmoving
26 party must go beyond the pleadings and identify specific facts which show a
27 genuine issue for trial. Id. at 324.

28 District courts are directed to conduct a *de novo* review of the adequacy of

an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press</u>, 489 U.S. 749, 755 (1989). Because FOIA cases rarely involve material factual disputes, they "are typically and appropriately decided on motions for summary judgment." <u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); see <u>Shannahan v. Internal Revenue Serv.</u>, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). Courts "follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case." <u>Shannahan</u>, 637 F. Supp. 2d at 912.

First, the district court must determine whether the agency has established that it fully discharged its obligation under FOIA to conduct an adequate search for responsive records. <u>Zemansky v. U.S. Envtl. Prot. Agency</u>, 767 F.2d 569, 571 (9th Cir. 1985). To meet this burden, the agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

<u>Id.</u> (quoting <u>Weisberg v. U.S. Dep't of Justice ("Weisberg II")</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

If the agency satisfies its initial burden, the court proceeds to the second step and considers "'whether the agency has proven that the information that it did not disclose falls within one of nine FOIA exemptions.'" <u>Shannahan</u>, 637 F. Supp. 2d at 912 (quoting <u>Los Angeles Times Commc'ns, LLC v. Dep't of the Army</u>, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006)). Agencies seeking to withhold documents pursuant to a FOIA exemption "have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the

statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991); see Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973). "The purpose of a *Vaughn* index 'is … to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court the opportunity to intelligently judge the contest.'" Shannahan, 637 F. Supp. 2d at 912 (quoting Wiener, 943 F.2d at 979).

Finally, "even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents." Id.; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). "'The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed.'" Id. (quoting Pac. Fisheries Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008).

B. Reasonableness of Search

The IRS contends it has conducted an adequate search for records responsive to Plaintiff's FOIA request. To fulfill its obligations under FOIA, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C.Cir.1990). The agency must show "[w]hat records were searched, by whom, and through what process." Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency can meet its burden by submitting a "reasonably detailed, nonconclusory" affidavit "in good faith." Id. at 551 (quoting Weisberg II, 745 F.2d at 1485). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do

4

not provide information specific enough to allow the plaintiff to challenge the procedures utilized" are insufficient to fulfill the agency's burden. Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980). In determining whether an agency has met its burden to prove an adequate search, "the facts must be viewed in the light most favorable to the requestor." Zemansky, 767 F.2d at 571 (citing Weisberg II, 745 F.2d at 1485).

The IRS submits the declaration of Delphine Thomas in support of its contention that it conducted an adequate search for records responsive to Plaintiff's FOIA request. (ECF No. 29-4.) Thomas is a Senior Disclosure Specialist whose duties include responding to FOIA requests for IRS records, which requires her to "have knowledge of the types of documents created and maintained by the various divisions and functions of the Service and an understanding of the provisions of the FOIA." Thomas Decl. ¶¶ 1-2.

Thomas states she was not initially assigned to respond to Plaintiff's FOIA request, but she familiarized herself with the steps taken prior to her involvement by reviewing the case notes of disclosure specialist Edward Pullman, who was initially assigned to the case. Id. She relates that on May 29, 2014, the IRS received a written FOIA request from a representative of Plaintiff seeking "a complete copy of the administrative file" for Plaintiff. Id. ¶ 9. Pullman deemed this request overly broad, and on June 17, 2014, contacted Plaintiff's representative, who agreed to narrow its scope to "records regarding forms 940, 941 and 1120 for the years 2007 through 2014." Id. ¶ 11.

From the case notes, Thomas determined that on June 20, 2014, Pullman used the IRS's Integrated Data Retrieval System ("IDRS"), an electronic system that "manages data that has been retrieved from the Master File System" which is "the Service's nation-wide electronic information system containing permanent taxpayer account information," to locate documents within the scope of plaintiff's FOIA request by entering the taxpayer identification number (TIN) into IDRS in

conjunction with certain command codes to retrieve information pertaining to the relevant tax years 2007-2014 (command code BMFOLT). Id. ¶¶ 4-6, 12. While completing his IDRS search, Pullman received an email from Tax Law Specialist Athena Amparano, who advised that "the requested administrative file was in the possession of Revenue Officer ("RO") John Black, who was assigned to a collection matter involving the Smart-Tek entities." Id. ¶ 14. The files of "20 different related entities" had been "commingled in one large file" consisting of 65 boxes of documents totaling "around 140,000 pages." Id. ¶¶ 14-15.

Pullman contacted Plaintiff's representative to discuss "further limiting the scope of the request," but Plaintiff's representative refused and took the position that "plaintiff was requesting the entire administrative file." Id. ¶ 17. Thomas, Pullman, and Amparano, later joined by "attorneys and law clerks in the Office of Chief Counsel," worked from August 2014 through fall 2015 to "search for documents responsive to plaintiff's FOIA request within the commingled administrative file of the Smart-Tek entities." Id. ¶ 26. Thomas does not indicate when the search was completed; she simply concludes, "[t]o my knowledge, there are no other records responsive to Plaintiff's request." Id. ¶ 27.

Plaintiff argues Thomas's declaration is insufficient to prove the adequacy of the IRS's search, because it fails to explain what documents the commingled files contained, the methodology used to review the 65 boxes of documents, criteria for selecting responsive documents, and because it does not identify the entities whose records were in the commingled file. Pl.'s Opp. at 6-7.

The Court agrees with Plaintiff in part. To sustain its burden, the IRS must show "[w]hat records were searched, by whom, and through what process." Steinberg, 23 F.3d at 552. Although a "reasonably detailed, nonconclusory" affidavit submitted "in good faith" will generally meet this burden, id. at 551 (quoting Weisberg, 745 F.2d at 1485), in key respects, Thomas's declaration is too conclusory to suffice.

First, the IRS has not explained how it interpreted Plaintiff's FOIA request (as initially submitted in writing, or as subsequently clarified in communications with Pullman), that is, what scope of records it decided fell within the scope of request and for which it searched in response. Federal agencies responding to FOIA requests are required to use search methods that can reasonably be expected to yield the requested information. Lane v. Dep't of Interior, 523 F.3d 1128, 1139 (9th Cir. 2008). Without a description of the scope of documents the IRS determined to be responsive to the request, the Court has no context for evaluating the reasonableness of the methods it used to find them.

Second, Thomas's declaration fails to give sufficient information about the IRS's review of the 65 boxes of documents. The IRS spent months reviewing the boxes and removing particular documents, but it has not explained what documents the document review team was looking for and pulling out of the boxes, including the criteria or search parameters the team used to determine which documents to remove for production. Although an agency need only prove its search was "reasonably calculated to uncover all relevant documents," Zemansky, 767 F.2d at 571, to evaluate the adequacy of the IRS's search, the Court needs information regarding the document review to determine whether the IRS's search of the 65 boxes was reasonable. See County of Santa Cruz v. Ctrs. for Medicare and Medicaid Servs., No. C-07-2889 MMC, 2009 WL 816633, at *2 (N.D. Cal. Mar. 26, 2009) (holding IRS failed to demonstrate reasonableness of search where supporting declarations reported that searches of various files located no responsive documents, without explaining "the process used to conduct [the IRS's] search"). [2]

---

[2] Thomas's statement "[t]o my knowledge, the other IRS employees assigned to review the documents in the boxes performed the same action," Thomas Decl. ¶ 26, is also conclusory. While "[a]s a general matter, '[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy' the personal knowledge requirement of Rule 56(e)" Lahr v. Nat'l Transp. Safety Board, 569 F.3d 964, 990 (9th Cir. 2009) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir.1994)), here, Thomas does not indicate

Next, the Court turns to Plaintiff's argument that the IRS cannot establish the reasonableness of its search without identifying the other entities whose records were in the 65-box commingled file. Opp. at 7. The IRS did not address this argument in its reply brief.

Two countervailing principles seem to bear upon Plaintiff's contention. On the one hand, the Court must make a de novo determination of the adequacy IRS's response to Plaintiff's FOIA request, Reporters Comm. for Freedom of Press, 489 U.S. at 755, and it must be able to "intelligently judge the contest" to perform this role. Wiener, 943 F.2d at 977. On the other hand, withholding information relating to return information of another taxpayer or taxpayers, including the identity of third-party taxpayers, is authorized under 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(a), and 5 U.S.C. § 552 (b)(7)(C). See Johnson v. Comm'r of Internal Revenue, 239 F. Supp. 2d 1125, 1128-29 (W.D. Wash. 2002).

Setting aside the merits of Plaintiff's argument, as a threshold issue, it seems likely that the alleged alter egos' identities have already been disclosed. "[O]nce tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information" and "'§ 6103's directive to keep return information confidential is moot.'" Lampert v. United States, 854 F.2d 335, 338 (9th Cir. 1988) (quoting Figur v. United States, 662 F. Supp. 515, 517 (N.D. Cal. 1987). Bonar is Plaintiff's president, and he indicates in a declaration submitted in support of Plaintiff's opposition that Plaintiff issued its FOIA request after being served with an IRS lien based on "payroll tax liabilities of unrelated corporations." Decl. Brian Bonar ¶ 2. Presumably the alleged alter egos were identified in the IRS lien. Such a presumption seems supported by Bonar's declaration; he describes the entities as "unrelated corporations," and his

---

she had such a supervisory role, nor is there any indication how Thomas learned what other IRS employees did to complete their review

characterization of the corporations as "unrelated" implies he knows who they are. Also, in researching the relevant legal issues, the Court encountered the district court's opinion in <u>Goldberg v. United States</u>, No. 13-61528-CIV, 2015 U.S. Dist. LEXIS 104815, at *3-4 n.2 (S.D. Fla. Aug. 5, 2015). The <u>Goldberg</u> litigation apparently arose from the same investigation of RO Black, and the district court's order appears to have disclosed the names of the entities involved. <u>See</u> <u>id.</u> If so, under <u>Lampert</u>, disclosing their names in this litigation would appear not to run afoul of § 6103(a).

The fact that any privilege pertaining to the identities of the alter egos may have been dispelled does not necessarily mean the identity of every entity whose files were in the 65 boxes has to be disclosed to establish the reasonableness of the IRS's search. At this stage, the record regarding the search the IRS undertook is not yet complete, and the Court will reserve ruling on the merits of Plaintiff's argument until the record is more fully developed.

Based on the foregoing, the Court finds the IRS has failed to carry its burden to demonstrate the adequacy of its search. Its motion for summary judgment will be denied without prejudice.

C. <u>Withholding of Responsive Documents Pursuant to FOIA Exemptions</u>

The IRS indicates it withheld all, or part, of responsive documents pursuant to FOIA exemptions.

    1. <u>5 U.S.C. § 552(b)(3) ("Exemption 3") in Conjunction with 26 U.S.C. § 6103(a); 5 U.S.C. § 552(b)(6) ("Exemption 6"); Records Withheld as Outside Scope of Request</u>

The IRS withheld responsive information pursuant to FOIA Exemptions 3 and 6, and it also withheld documents it contends fell outside the scope of Plaintiff's request.

Under Exemption 3, matters "specifically exempted by statute" are deemed exempted under FOIA "if that statute—(A)(i) requires that the matters be withheld

from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld…." 5 U.S.C. § 552(b)(3)(A). 26 U.S.C. § 6103 is a provision within the IRS Code and has been determined to be an Exemption 3 statute. Long v. United States, 742 F.2d 1173, 1178 (9th Cir. 1984). Section 6103(a) provides that taxpayer "returns and return information shall be confidential." 26 U.S.C. § 6103(a). "Return information" is defined to include, among other things, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, … whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data … with respect to a return….." 26 U.S.C. § 6103(b)(2). Pursuant to Exemption 3 and § 6103(a), the IRS withheld documents responsive to Plaintiff's FOIA request because they contained information of "taxpayers other than the plaintiff." Valvardi Decl. ¶ 11.

Exemption 6 restricts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under Exemption 6, the IRS withheld responsive information because it related to taxpayers, tax preparers, and/or persons other than Plaintiff. Valvardi Decl. ¶¶ 21-23.

The IRS also withheld documents that "concern entities other than plaintiff involved in [this] litigation" on the ground they fell outside the scope of Plaintiff's FOIA request. Valvardi Decl. ¶ 27. No exemption need apply to justify withholding on this ground, because such documents are not subject to production under FOIA for the simple reason that they were not requested. See 5 U.S.C. § 552(a)(6)(A) (requiring agency to act on "any request for records made under paragraph (1), (2), or (3)…") (emphasis added).

At this stage, the Court will reserve ruling on the validity of the IRS's withholding of information under Exemptions 3 and 6, and its claim that documents

were not produced because they fell outside the scope of Plaintiff's FOIA request. IRS's response to its FOIA request was inadequate because it failed to produce documents pertaining to alter ego entities whose tax liability was the basis for the lien against Plaintiff. The information withheld on the basis of the foregoing exemptions relates to unidentified "taxpayers" other than Plaintiff. Similarly, the IRS's contention certain documents are nonresponsive is based on the fact they address "entities other than plaintiff." Some of the "taxpayers" or "entities other than plaintiff" may be the alter ego entities whose documents Plaintiff seeks. The IRS disputes whether Plaintiff can obtain tax information relating to Plaintiff's alter egos without an authorization from the alter ego. Plaintiff cannot obtain such an authorization, however, without knowing which entities' records have been withheld. Although the IRS claims even the names of the alter egos are protected from disclosure, if those names have already been published such that any related privacy interest has been lost, there would appear to be no impediment to identifying, in subsequent briefing, any alter ego "taxpayers" whose records were withheld. If the IRS can disclose those names in subsequent proffers, Plaintiff will have the opportunity to more intelligently advocate for disclosure of the withheld information. Wiener, 943 F.2d at 977.

The Court will therefore reserve ruling on these issues until the record has been more fully developed.

2. 5 U.S.C. § 552(b)(5) ("Exemption 5")

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency…." 5 U.S.C. § 552(b)(5). "This exemption entitles an agency to withhold … documents which a private party could not discover in litigation with the agency." Pac. Fisheries, 539 F.3d at 1148 (quoting Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997). "Exemption 5 thus covers the attorney-client privilege, the attorney work-product

privilege, and the executive 'deliberative process' privilege." Maricopa, 108 F.3d at 1092.

### a) Attorney-Client Privilege

Pursuant to Exemption 5, the IRS withheld eight pages of documents on the ground they contain information protected by the attorney-client privilege. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (internal quotation and citation omitted).

The IRS submits the declaration of Christopher Valvardi, an attorney in the IRS's Office of Associate Chief Counsel, in support of its privilege claim. He states the withheld information consisted of emails containing confidential legal advice that RO Black received from an IRS Chief Counsel attorney (pages 1968-69), as well as case notes reflecting his discussions with Chief Counsel attorneys and facts he disclosed to them on which their advice to him was based (pages 2110-15). Valvardi Decl. ¶ 13. He indicates he is familiar with FOIA's segregation requirements, and that the IRS complied with such requirements in withholding the referenced information. Id. ¶ 9.

The Court finds the Valvardi declaration sufficiently detailed and non-conclusory to support the conclusion that the withheld information falls within the scope of the privilege, because it reflects RO Black's confidential communications with agency lawyers for the purpose of obtaining legal advice. Ruehle, 583 F.3d at 607. The Court also finds the IRS complied with its duty to produce reasonably segregable portions of documents containing such information.

Accordingly, the Court grants the IRS's motion for summary judgment as to its determination that the foregoing documents contained attorney-client privileged information and were exempt from disclosure pursuant to Exemption 5.

//

### b) Deliberative Process Privilege

The IRS withheld documents pursuant to Exemption 5 on grounds they fall within the scope of the deliberative process privilege. "In order to be protected by the deliberative process privilege, a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) (quoting Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988) (additional citation and internal quotation marks omitted)) (holding death penalty evaluation form completed by U.S. Attorney and submitted before final decision whether to seek the death penalty fell within deliberative process privilege). Shielding such documents from production is meant to encourage forthright and candid discussions of ideas and improve the decision-making process. Id. (citing Assembly of the State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir.1992)).

The IRS relies on the Valvardi declaration to support its withholding of responsive information pursuant to the deliberative process privilege. Valvardi Decl. ¶¶ 14-20. He states that the withheld records were email messages containing pre-decisional legal advice (pages 1968-69, which are also the subject of the IRS's claim of attorney-client privilege); case notes memorializing examination activities that "include pre-decisional statements regarding proposed courses of action" (pages 2110-15, also the subject of the IRS's attorney-client privilege claim); and "sensitive case reports containing pre-decisional proposals of possible courses of action, submitted to management for review" (pages 2117-20) Id. ¶ 20(a)-(c). He indicates the withheld information is both "pre-decisional because it reflects opinions and recommendations … that precede the final decision to undertake specific collection efforts, and the process of determining the appropriate collection action remains ongoing," and "deliberative because they

1 discuss or propose options for reaching the proper enforcement determinations." 2 Id. ¶ 20. He states that while the IRS "has not made a final determination about 3 whether or how to pursue further action against plaintiff," the withheld records 4 reflect the agency's "give-and-take" regarding "the potential decision to take 5 enforcement action against plaintiffs, what action should be taken, and the bases 6 and justificiations for such action." Id. ¶¶ 14, 17.

The Court finds the Valvardi declaration sufficient to support the IRS's privilege claim, in that the withheld documents are both predecisional and deliberative in the sense that they are actually related to the IRS's ongoing efforts to determine how to proceed with its enforcement action. Fernandez, 231 F.3d at 1246. The Court also finds the IRS has shown it complied with its duty to reasonably segregate and produce non-exempt information. See Valvardi Decl. ¶ 9.

Accordingly, the Court grants the IRS's motion for summary judgment as to its withholding of the foregoing documents on this ground.

### 3. 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)")

Exemption 7(A) applies to "records or information compiled for law enforcement purposes" to the extent production of such information "could reasonably be expected to interfere with enforcement proceedings…." 5 U.S.C. § 552(b)(7)(A). To support withholding documents under Exemption 7(A), an agency "must establish only that they were investigatory records compiled for law enforcement purposes and that production would interfere with pending enforcement proceedings." Barney v. Internal Revenue Service, 618 F.2d 1268, 1272-73 (8th Cir. 1980). For purposes of Exemption 7(A), the IRS is a law enforcement agency, Shannahan v. Internal Revenue Serv., 680 F. Supp. 2d 1270, 1281 (W.D. Wash. 2010), and civil tax enforcement proceedings are "enforcement proceedings," Barney, 618 F.2d at 1273. "The IRS need only make a general showing that disclosure of its investigatory records would interfere with its

enforcement proceedings." Lewis v. Internal Revenue Serv., 823 F.2d 375, 380 (9th Cir. 1987). "[D]isclosure of such records as witness statements, documentary evidence, agent's work papers and internal agency memoranda, prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government's case." Barney, 618 F.2d at 1273; see NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 236-37 (1978).

The IRS submits the declaration of Rosanna Savala, a Supervisory Revenue Officer, in support of its decision to withhold parts of three pages of responsive documents under Exemption 7(A). Savala Decl. ¶¶ 12-14. Savala indicates the withheld information is contained in "sensitive case reports" that were redacted "because they contain facts … [that] reveal the strength of the Service's position and its reliance on certain evidence." Id. ¶ 14. She further states that "[d]isclosure of the information withheld would allow plaintiff premature access to information it could use … to circumvent the Service's ongoing efforts to collect plaintiff's outstanding taxes, including efforts to seize certain property." Id.

The Court finds the IRS's evidence sufficient to show disclosure of the referenced information would interfere with its enforcement proceedings such that it was justified in withholding the information under Exemption 7(A), and further finds the IRS complied with its duty to reasonably segregate and produce all non-exempt information. Valvardi Decl. ¶ 9. Accordingly, the IRS's motion for summary judgment is granted as to its withholding of information under this exemption.

4. 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)")

Exemption 7(D) protects information compiled for law enforcement purposes from disclosure to the extent it

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law

enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7)(D). Exemption 7(D) "has long been recognized as affording the most comprehensive protection of all of FOIA's law enforcement exemptions." Billington v. U.S. Dep't of Justice, 301 F. Supp. 2d 15, 22 (D.D.C. 2004). To invoke its protections, an agency must show the particular source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993). "A source should be deemed confidential if the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent [it] thought necessary for law enforcement purposes." Id. at 174.

The IRS relies on the declaration of Valvardi in support of its decision to withhold nine pages of responsive documents in full or in part under Exemption 7(D). Valvardi Decl. ¶¶ 24-25. Valvardi states that eight of the withheld pages consist of memoranda of an interview RO Black conducted with a confidential source pursuant to an assurance of confidentiality, and the ninth page (page 2110) contains the name of a confidential source as well as information the source provided relevant to RO Black's investigation. Valvardi ¶ 25(a), (b).

The Court finds the evidence sufficient to show the withheld information falls within Exemption 7(D), Landano, 508 U.S. at 174, and that the IRS reasonably segregated and produced all non-exempt information. See Valvardi Decl. ¶ 9.

Accordingly, the Court grants the IRS's motion for summary judgment as to the validity of its withholding of the foregoing information under Exemption 7(D).

5. 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)")

Exemption 7(E) protects information compiled for law enforcement purposes from disclosure to the extent it "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To establish this exemption, "the Government must show that the technique that would be disclosed under the FOIA request is a technique unknown to the general public." Pully v. Internal Revenue Serv., 939 F. Supp. 429, 438 (E.D. Va. 1996) (citing Malloy v. Dep't of Justice, 457 F. Supp. 543, 545 (D.D.C. 1978)); see Wilkinson v. Fed. Bureau of Investigation, 633 F. Supp. 336, 349 (C.D. Cal. 1986) (to justify withholding under Exemption 7(E), "the government will have the burden of proving that these techniques are not generally known to the public").

The IRS indicates it withheld five pages pursuant to Exemption 7(E). According to Valvardi, the redacted pages contain notes that "include discussions of several techniques and procedures typically used by examiners to gather evidence about taxpayers, and to identify the relationships among various entities." Id. However, the declaration does not address whether the techniques and procedures discussed in the documents relate to "technique[s] unknown to the general public." Pully, 939 F. Supp. at 438. Accordingly, the Court will deny summary judgment without prejudice as to this exemption.

### 6. Exemption 3 in Conjunction with 26 U.S.C. § 6103(e)(7)

The IRS withheld parts of documents pursuant to 26 U.S.C. § 6103(e)(7), which is an Exemption 3 statute. Chamberlain v. Kurtz, 589 F.2d 827, 839-40 & n.26 (5th Cir. 1979) (referring to § 6103(e)(7) under its then-applicable statutory number, § 6103(e)(6)). Pursuant to § 6103(e)(7), "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7). Section 6103(e)(7) applies where a taxpayer seeks its own tax return, and gives the taxpayer "unrestricted access to

his own returns, but as to other information or materials collected by the IRS in the course of determining tax liability" availability of the returns "is conditioned on the Secretary's determination that such access would not impair tax administration." Chamberlain, 589 F.2d at 837. Documents reflecting information "prepared or collected by the Secretary with respect to determining the existence of liability for a tax or penalty" is subject to withholding under § 6103(e)(7). Id. at 840.

Here, Savala states she is authorized pursuant to Treasury Department Order No. 150-10 and related authority to determine under § 6103(e)(7) whether disclosure of return information would impair tax administration. Savala Decl. ¶ 9. She determined that parts of five pages of case reports (pages 2116-17, 2119, and attachments 2118 and 2121) would have such an impairing effect, as they "contain data … with respect to the determination of the existence of plaintiff's liability for tax, penalties, forfeiture, or other imposition" and "[t]he information withheld in these sensitive case reports reveals the direction, scope, and focus of the case, the strength of the Service's position, and its reliance on certain evidence." Savala Decl. ¶ 11. She avers that "[d]isclosure of this information would allow plaintiff premature access to information" it could then use to "undermine" or "circumvent the Service's ongoing efforts to collect plaintiff's outstanding taxes, including efforts to seize certain property." Id.

The Court finds the IRS's evidence sufficient to show disclosure of the withheld information access would impair tax administration, such that it is subject to withholding under § 6103(e)(7). The Court further finds the IRS complied with its duty to reasonably segregate and produce non-exempt information. Accordingly, the Court grants the IRS's motion for summary judgment as to this exemption.

//
//
//

## III. CONCLUSION AND ORDER

For the reasons discussed above, the IRS's motion for summary judgment is GRANTED IN PART and DENIED WITHOUT PREJUDICE in part.

IT IS SO ORDERED.

Dated: July 10, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court